DECISION AND JUDGMENT ENTRY
{¶ 1} William H. Evans, Jr., appeals the trial court's judgment convicting him of murder. He first argues that the trial court erred by ordering him to wear restraints during his trial. Although the record does not reveal any compelling need for restraints, the court's error in ordering Evans to wear restraints constitutes harmless error. Evans chose to wear prison attire during his trial, and thus, eroded his presumption of innocence. The addition of restraints did not further erode this presumption. Therefore, Evans' assertion that the court's error requires us to reverse the court's judgment is meritless.
 {¶ 2} Second, Evans contends that his trial counsel rendered ineffective assistance of counsel by failing to withdraw and by failing to object to the court's decision to use restraints. The record shows that counsel requested the court to allow her to withdraw but the court would not permit it. Thus, Evans' complaint that counsel was ineffective for failing to withdraw is meritless. Because Evans cannot show that prejudice resulted from the court's decision to use restraints, he cannot show that counsel rendered ineffective assistance of counsel. Evans did not suffer prejudice because he chose to have the jury see him in his prison attire and the addition of restraints did not further erode his presumption of innocence.
 {¶ 3} Third, Evans argues that the trial court abused its discretion by failing to instruct the jury on voluntary manslaughter. Because the evidence does not show that the victim sufficiently provoked Evans so as to bring on a sudden fit of passion or rage, a voluntary manslaughter instruction would not have been appropriate. Therefore, the trial court did not abuse its discretion by rejecting Evans' request for a voluntary manslaughter instruction.
 {¶ 4} Fourth, Evans complains that counsel's technical errors when operating a videotape during which Evans referred to his prior imprisonments, arrests, and crimes constitutes ineffective assistance of counsel. He asserts that counsel's failure to properly operate the videotape resulted in the jury hearing inadmissible evidence of prior crimes, arrests, and imprisonments. Because the evidence of Evans' guilt is overwhelming, i.e., he confessed, no danger exists that the jury convicted him based upon improper evidence. Therefore, any error associated with counsel's technical operation of the videotape did not affect the outcome of the trial and cannot constitute ineffective assistance of counsel.
 {¶ 5} Fifth, Evans asserts that the trial court committed plain error by failing to give the jury a limiting instruction regarding his prior arrests. A trial court has no duty to provide a limiting instruction when the defendant fails to request one. Thus, the court did not plainly err by failing to give a limiting instruction in this case.
 {¶ 6} Sixth, Evans argues that the trial court abused its discretion by admitting hearsay statements. He contends that the statements were not properly admissible as statements against interest because he, the declarant, was available as a witness. He further asserts that the statements were not relevant. Under Evid.R. 801(D)(2)(a), a statement is not hearsay if it is offered at trial against a party-opponent and is that party's own statement. This is the situation here. The state offered the statements against Evans and they were his own statements. Thus, they fall within the purview of Evid.R. 801(D)(2)(a) and are not inadmissible hearsay. Additionally, the statements were relevant to refute Evans' account of the victim's death and his attempts to minimize his culpability. His statements tended to show that he harbored more animosity toward the victim than what he attempted to portray through his videotaped confession and that the victim's death was not the result of a sudden, heated lover's quarrel.
 {¶ 7} Seventh, Evans asserts that the cumulative effect of multiple errors deprived him of a fair trial. Even if we recognize the potential errors, the cumulative effect did not deprive Evans of a fair trial and the result of the proceedings would not have differed. The evidence is overwhelming. Evans confessed to causing the victim's death.
 {¶ 8} Finally, Evans raises several pro se arguments. He contends that the trial court judge was biased because of an alleged relation to the victim's family and law enforcement officers. Nothing in the record supports this argument. In fact, the trial court judge announced that he had no relation to the victim's family. Next, he claims that someone tampered with the crime scene by placing hairs in the victim's hand. Again, nothing in the record supports this argument. He further claims that the victim's body must have been tampered with because the crime scene photos did not show red marks on her neck but the coroner's photos did. Only Evans' pure speculation supports this argument. Evans additionally argues that the law enforcement officers did not properly process the crime scene because they did not test a shop-vac for traces of blood. The investigating officer stated that he did not observe anything of evidentiary value on the shop-vac. Thus, Evans cannot show that the officers failed to properly process the crime scene. Evans also appears to contend that some of the investigating officers were biased. Nothing in the record supports this claim. Therefore, all of Evans' pro se arguments are meritless. Accordingly, we affirm the trial court's judgment.
 {¶ 9} On August 11, 2004, emergency responders found Kelly Sullens-Clark brutally beaten and unresponsive. Shortly thereafter, she was pronounced dead at the scene.
 {¶ 10} On August 27, 2004, the Scioto County Grand Jury returned an indictment charging Evans with murder, in violation of R.C. 2903.02(B).
 {¶ 11} Before trial, Evans expressed dissatisfaction with his court-appointed counsel, Christine M. Scott. He filed a pro se "Request to Intervene on Council [sic] Dismissal," and Attorney Scott filed a motion to withdraw. On March 17, 2005, the court overruled counsel's motion to withdraw. On March 18, 2005, defense counsel notified the court that Evans contacted her by telephone and stated that he believed "that no further discussion" with counsel will aid his defense and that he would see counsel at voir dire.
 {¶ 12} The day before trial, the court held a hearing at which Attorney Scott repeated her concerns about her relationship with Evans. She stated that he will not communicate with her. Evans stated that he does not want to represent himself. The court noted that his case is six months old and that Attorney Scott knows the most about the case. The court observed that Attorney Scott is highly competent. In an attempt to appease Evans, however, the court appointed Attorney Michael Mearan as co-counsel.
 {¶ 13} The court also discussed security and asked his Chief Probation Officer in charge of security, Mr. Crabtree, for his recommendation: "[B]ased upon twenty-five years of experience in dealing with the prisoners in the jail and the court procedures, I would ask this Court that the defendant be kept in leg irons, belt and handcuffs for the security of this court for the duration of the trial during all proceedings." Evans' response was that he is "at peace with God and myself" and that his goal "is the truth." The court ruled "it is going to be this Court's policy hereinafter when anybody is charged with a violent offense they will have to wear what Mr. Crabtree has suggested and I will, however, give the jury a cautionary instruction regarding the fact that he is shackled that they are not to hold that against him in any way." The state noted for the record that Evans has threatened to kill deputies at the jail.
 {¶ 14} The court advised Evans that he could wear street clothes, but Evans stated that he does not have any. The court directed his counsel to find him clothes.
 {¶ 15} Evans claimed that the trial court judge was biased because of an alleged relation to the victim's family. The trial court judge stated that he has no relation to the victim's family and assured Evans that he would receive a fair trial.
 {¶ 16} On the morning of trial, March 23, 2005, Attorneys Scott and Mearan stated that they went to see Evans at the jail and he refused to see them and refused the street clothes they had provided. The court asked Evans if he chose to wear his prison clothes and he said "yes." Also at this hearing, Attorney Scott stated Evans called her an "Anti-Christ Bitch," and she stated that she "felt unsafe being around him and wanted to speak with him about that so [she] would feel more safe being around him in court."
 {¶ 17} At trial, Lieutenant Debbie Brewer testified that she responded to the victim's residence at approximately 1:50 a.m. in response to a 911 call. She observed the victim crying. The victim stated that she and Evans had argued. After she and Sergeant Compton secured the scene, they left. Around 3:24 a.m. they returned to the same residence in response to an emergency call. She discovered Clark laying on the bed "in an awkward position," with "obvious bruising to her face."
 {¶ 18} Sergeant James Charles also responded to the second emergency call. He noticed "quite a bit of discoloration around [the victim's] neck." He stated that he collected three hairs from her hand. He did not notice any blood stains or body tissue on the shop vac and did not observe any other damage. He "saw nothing of evidentiary value on the outside" of the shop-vac.
 {¶ 19} Dr. Robert Pfalzgraf, the coroner, stated that the victim's cause of death was manual strangulation with blunt impacts to the chest and head. The victim "received multiple blunt impact injuries or blows to her head and torso which resulted in multiple internal injuries[.] [S]he also was manually strangled and the combination of the manual strangulation and the blunt impact injuries to her body were the cause of her death." She had lacerations about her head, torso, abdomen, back, and arms and blunt impact trauma to the lower extremities. The coroner observed hemorrhages in the eyelid, which showed pressure was applied to her neck. The victim had multiple rib fractures and the ribs punctured her lungs. He stated that the victim must have endured very forceful blows to the chest area. He also stated that her heart was bruised and that the back surface of her heart suffered a laceration, due to a forceful blow to the chest that probably caused compression of the heart between the breastbone and the backbone.
 {¶ 20} Detective Norbert Cassidy testified that he interviewed Evans, which he videotaped. During the interview, Evans stated that he had been in prison. Attorney Mearan agreed to operate the videotape so that he could stop the tape before the jury heard Evans' statements about his prior incarcerations. However, he did not operate it properly and the jury heard Evans refer to prior incarcerations, arrests, and crimes. Attorney Scott stated that Evans did not care if they showed the whole tape. Both defense counsel agreed to play the whole tape and to have the court give a limiting instruction. The court then instructed the jury: "This obviously wasn't working the way it was going on now and references have been made to prior incarcerations. That is not a part of this case. Okay, the only thing that is a part of this case is what you are hearing and any references that have been made to prior incarcerations are not to be considered for any purpose by you, okay. Is that a good enough instruction. Defense counsel, is that instruction appropriate?" Defense counsel agreed that the instruction was appropriate.
 {¶ 21} The state sought to introduce three of Evans' out-of-court statements. Defense counsel argued that the statements were inadmissible hearsay statements and that they were not relevant. The court overruled the objection. Duke Rouse, a corrections officer at the Jackson County Correctional Facility, testified that Evans stated, "Don't you guys understand. I am a convict. I am looking for the wall. I killed that bitch."
 {¶ 22} Charles Wilson, who works at the Scioto County jail, testified that Evans stated, "Fuck those guys. Tell those guys to check that bitch's pulse."
 {¶ 23} Scioto County Sheriff's Deputy Kevin Metzle, testified that Evans stated that "he was being held illegally, being detained illegally and it was bullshit. He said first chance he got a deputy would die like the bitch he knocked off."
 {¶ 24} The defense then called Evans to the stand. Before he took the stand, he started speaking. He claimed that there has been a cover-up and that Detective Lynn Brewer tampered with the evidence. The court then recessed. Evans requested his attorneys to ask the court to dismiss them from the case, which the court refused. Evans did not attempt to return to the stand.
 {¶ 25} On March 25, 2005, the jury found Evans guilty. The court sentenced Evans to fifteen years to life in prison.
 {¶ 26} Evans timely appealed and assigns the following errors:
 {¶ 27} "I. THE TRIAL COURT COMMITTED PLAIN ERROR IN ORDERING THE APPELLANT TO WEAR HANDCUFFS DURING HIS TRIAL.
 {¶ 28} II. TRIAL COUNSEL'S FAILURE TO MOVE TO WITHDRAW AMOUNTS TO INEFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT'S DECISION TO SHACKLE THE APPELLANT THROUGHOUT TRIAL IS NOT PLAIN ERROR.
 {¶ 29} III. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO PROVIDE AN INSTRUCTION ON VOLUNTARY MANSLAUGHTER.
 {¶ 30} IV. APPELLANT SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S NEGLECT, IGNORANCE, OR SENSELESS DISREGARD IN PERMITTING APPELLANT'S PRIOR BAD ACTS TO BE INTRODUCED AT TRIAL.
 {¶ 31} V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR FOR FAILING TO OFFER A LIMITING INSTRUCTION ON APPELLANT'S PRIOR ARRESTS WHICH WERE INTRODUCED AS EVIDENCE.
 {¶ 32} VI. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING IRRELEVANT HEARSAY STATEMENTS AGAINST THE APPELLANT.
 {¶ 33} VII. THE APPELLANT SUFFERED PREJUDICE BY WAY OF THE CUMMULATIVE [SIC] EFFECT OF ALL ERRORS THROUGHOUT TRIAL."
 {¶ 34} Evans also filed a pro se motion, which we granted, requesting this court to consider additional matters that his attorney did not raise. He asserts that the trial judge was biased because of his alleged relation to the law enforcement officers who investigated the murder. He claims that there was crime scene tampering and neglect, perjury, and "hindrance of legal process."
 I. {¶ 35} In his first assignment of error, appellant asserts that the trial court committed plain error by ordering him to wear handcuffs during trial "for security" purposes. He asserts that the court abused its discretion because nothing suggested a need for restraints.
 {¶ 36} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." For a reviewing court to find plain error, the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. See, e.g., State v. Noling,98 Ohio St.3d 44, 56, 781 N.E.2d 88, 2002-Ohio-7044; State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Landrum (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710; see, also, State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" Barnes, 94 Ohio St.3d at 27 (quotingUnited States v. Olano (1993), 507 U.S. 725, 736,113 S.Ct. 1770, 123 L.Ed.2d 508, quoting United States v. Atkinson
(1936), 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555).
 {¶ 37} Because the presence of restraints tends to erode the presumption of innocence that our system attaches to every defendant, "no person should be tried while shackled * * * except as a last resort." Illinois v. Allen (1970), 397 U.S. 337, 344,90 S.Ct. 1057, 25 L.Ed.2d 353; see, also, State v. McKnight107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 219; Statev. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, at ¶ 79. "The placing of restraints upon a criminal defendant during his trial may significantly affect the jury's perception of the defendant, and may thus infringe upon the presumption of innocence, by stripping the defendant of the physical indicia of innocence. Restraints may also impede the defendant's ability, and thus implicate his Sixth Amendment right, to confer with his counsel and to assist in his defense. Moreover, the use of restraints may `affront * * * the very dignity and decorum of judicial proceedings that the judge[,] [by imposing the restraints, was] seeking to uphold.'" State v. Leonard,
Hamilton App. No. C-030492, 2004-Ohio-3323, quoting Allen,397 U.S. at 344.
 {¶ 38} While shackling is an extreme measure, in some circumstances it may be necessary for the safe, reasonable, and orderly progress of the trial, such as when a defendant presents a danger of violence or escape. State v. Frazier, Hamilton App. Nos. C-030571 and C-030572. Nevertheless, because the use of restraints is an inherently prejudicial practice, courts should use them only as a last resort and only when they are justified "by an essential state interest specific to each trial."Leonard, supra, at ¶ 45, quoting Allen, 397 U.S. at 344, andHolbrook v. Flynn (1986), 475 U.S. 560, 568-569,106 S.Ct. 1340, 89 L.Ed.2d 525; see, also, Frazier. The violent nature of the crime for which a defendant is being tried does not, standing alone, justify the use of restraints. Frazier; Leonard at ¶ 50.
 {¶ 39} Further, while not "an absolute rule," the "preferred and encouraged practice" is for the trial court to hold a hearing before imposing restraints upon a defendant during any phase of a trial. Frazier. The decision whether to impose restraints lies within the trial court's discretion. Franklin at ¶ 79-80. With or without a hearing, an appellate court will not disturb the trial court's exercise of its discretion to impose restraints if the record demonstrates "a compelling need to impose exceptional security procedures." Franklin, at ¶ 82; Leonard at ¶ 49. While the decision lies within the trial court's discretion, the court must actually exercise its discretion. Frazier. It cannot simply defer to the wishes of police officers or order restraints solely because of the defendant's status as an inmate. Frazier,
citing State v. Carter (1977), 53 Ohio App.2d 125, 131,372 N.E.2d 622; Brofford v. Marshall (C.A.6, 1985), 751 F.2d 845,855; State v. Ward, Cuyahoga App. No. 81282, 2003-Ohio-3015, at ¶ 27; State v. Simmons (Dec. 20, 1995), Scioto App. No. 94CA2281.
 {¶ 40} In the case at bar, the trial court relied upon the courtroom security personnel's opinion regarding the need for restraining Evans. The court did not rely upon anything specific regarding Evans' conduct, other than the violent nature of the offense, to justify the use of restraints. Because the court failed to cite circumstances demonstrating a compelling need for restraining Evans, beyond the violent nature of the crime, the court erred by ordering him to be restrained. See Simmons.
However, because the error did not prejudice Evans, we cannot recognize the error as plain error.
 {¶ 41} Evans chose to wear prison attire during his trial. Prison attire carries a similar indicia of guilt as restraints. When a defendant is forced to appear before the jury in prison clothes, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." Holbrook v. Flynn (1986), 475 U.S. 560, 568,106 S.Ct. 1340, 89 L.Ed.2d 525, quoting Estelle v. Williams
(1976), 425 U.S. 501, 504-5, 96 S.Ct. 1691, 48 L.Ed.2d 126. Being compelled to wear prison or jail clothing, like being restrained, erodes the presumption of innocence. See State v. Hecker (July 15, 1994), Pickaway App. No. 93CA10; see, also, State v.Watters, Cuyahoga App. No. 82451, 2004-Ohio-2405.
 {¶ 42} Evans' decision to wear prison attire had already eroded the presumption of innocence and Evans has not shown that the use of restraints further eroded that presumption. Once Evans chose to permit the jury to see him in prison attire, the damage was done. Thus, the court's error in ordering him restrained during trial did not seriously affect the fairness of the proceedings and does not constitute plain error.
 {¶ 43} Accordingly, we overrule Evans' first assignment of error.
 II. {¶ 44} Both Evans' second and fourth assignments of error raise ineffective assistance of counsel claims. Therefore, we consider them together.
 {¶ 45} In his second assignment of error, Evans essentially argues that trial counsel rendered ineffective assistance of counsel by not withdrawing and by not objecting to the use of restraints.
 {¶ 46} In his fourth assignment of error, appellant asserts that trial counsel rendered ineffective assistance of counsel by improperly operating a videotape player that resulted in the jury hearing evidence of his prior incarcerations, arrests, and crimes.
 A. Standard of Review {¶ 47} A reviewing court will not reverse a trial court's judgment based upon a defendant's ineffective assistance of counsel claim unless the defendant shows both (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. See, e.g., State v. Hand,107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, at ¶ 199; State v.Smith (2000), 89 Ohio St.3d 323, 327, 731 N.E.2d 645, citingStrickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674. To show that counsel performed deficiently, the defendant must demonstrate that defense counsel's performance fell below an objective standard of reasonableness. See, e.g.,Bradley. To show that counsel's deficient performance prejudiced the defense, the defendant must show a reasonable probability exists that, were it not for counsel's errors, the result of the proceeding would have been different. See, e.g.,State v. White (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772. If one part of the Strickland test disposes of an ineffective assistance of counsel claim, we need not address both parts.Strickland; Bradley.
 B. Failure to Withdraw and Failure to Object to Use of Restraints {¶ 48} First, Evans' assertion that counsel rendered ineffective assistance of counsel by failing to withdraw is without merit. She asked the court to allow her to withdraw, but the court would not permit it.
 {¶ 49} Second, Evans' argument that counsel rendered ineffective assistance by failing to object to his restraints is also unavailing. As we explained in Evans' first assignment of error, Evans cannot demonstrate prejudice resulting from the use of restraints. He chose to appear before the jury in prison clothes and the use of restraints did not further erode the presumption of innocence. Therefore, because Evans cannot show prejudice resulted from counsel's failure to object to the use of restraints, he cannot demonstrate that counsel was ineffective.
 C. Failure to Object to Prior Bad Acts Evidence {¶ 50} In his fourth assignment of error, appellant asserts that trial counsel rendered ineffective assistance of counsel by improperly operating a videotape player that resulted in the jury hearing evidence of his prior incarcerations, arrests, and crimes and by failing to object to the evidence.
 {¶ 51} Generally, all relevant evidence is admissible. See Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 52} The trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States or the Ohio Constitutions, an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the Supreme Court of Ohio." Evid.R. 402. Moreover, relevant "evidence is not admissible if its probative value * * * substantially outweigh[s] * * * the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
 {¶ 53} Although evidence of an accused's character, including his prior "bad acts," in a criminal case may be relevant, Evid.R. 404 sets forth a general bar against the use of such character evidence. Evid.R. 404(B) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.
 {¶ 54} In State v. Schaim (1992), 65 Ohio St.3d 51,600 N.E.2d 661, the court discussed the underlying rationale for the limited admissibility of other acts evidence as follows: "The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See State v. Curry (1975), 43 Ohio St.2d 66,68, 330 N.E.2d 720, 723. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, * * *." Schaim, 65 Ohio St.3d at 59.
 {¶ 55} In the case at bar, defense counsel's failure to properly operate the videotape so as to prevent the jury from hearing evidence regarding Evans' prior incarcerations, arrests, and crimes did not prejudice Evans' case. In light of the overwhelming evidence of Evans' guilt, i.e., he confessed, the evidence was not prejudicial. Evans' assertion that "it is highly probable that the jurors would have acquitted" him of murder if they had not heard the evidence of his prior incarcerations, arrests, and crimes is specious, especially in light of his confession that he caused the victim's death. Additionally, to the extent that he argues that the evidence affected the credibility of a voluntary manslaughter defense, the trial court did not allow a voluntary manslaughter instruction and thus it was not available for the jury to consider as a defense.
 {¶ 56} Moreover, Evans expressed indifference as to whether the jury should hear the evidence on the videotape of his prior arrests, incarcerations, and crimes. He stated that he "would just sort of like the jury to hear that" and "I don't mind at all." His trial counsel stated that Evans preferred that the jury hear the entire tape.
 {¶ 57} Accordingly, we overrule Evans' second and fourth assignments of error.
 III. {¶ 58} In his third assignment of error, Evans asserts that the trial court erred by failing to instruct the jury on voluntary manslaughter. He claims that evidence that he and the victim argued, that the victim hit him, and that he had been drinking all day constitutes sufficient evidence of provocation to warrant the instruction.
 {¶ 59} Generally, a trial court has broad discretion in deciding how to fashion jury instructions. The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if it is "`a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'"State v. Lessin (1993), 67 Ohio St.3d 487, 493, 620 N.E.2d 72
(quoting State v. Nelson (1973), 36 Ohio St.2d 79,303 N.E.2d 865, paragraph one of the syllabus).
 {¶ 60} In determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See id. at 494. A trial court is vested with discretion to determine whether sufficient evidence was presented at trial to require a particular jury instruction. State v. Mitts (1998),81 Ohio St.3d 223, 228, 690 N.E.2d 522. If, however, the evidence does not warrant an instruction or if an instruction is not appropriate in light of the crime charged, the trial court is not obligated to give the instruction. See Lessin,67 Ohio St.3d at 494. Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was sufficient to support the requested charge or that the requested instruction was pertinent to the crime charged. See Mitts;State v. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus; see, also, State v. Elijah (July 14, 2000), Montgomery App. No. 18034. A trial court abuses its discretion if the trial court's attitude was unreasonable, arbitrary or unconscionable. See, e.g., State v. Montgomery
(1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167.
 {¶ 61} R.C. 2903.03 defines voluntary manslaughter and states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage * * * shall knowingly cause the death of another." A defendant is entitled to a voluntary manslaughter instruction "when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." State v.Shane (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. Otherwise, the trial court is not required to give the voluntary manslaughter instruction. Id.
 {¶ 62} A trial court need not give a voluntary manslaughter instruction unless sufficient evidence shows that the defendant acted under the influence of sudden passion or in a sudden fit of rage. Id. at 634; State v. Lee, Franklin App. No. 04AP-234,2004-Ohio-6834, at ¶ 16. To determine whether sufficient evidence of sudden passion or fit of rage exists, a trial court must employ a two-part inquiry. First, the court must objectively determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. State v.Mack (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328. "`If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'" Id. (quoting Shane,63 Ohio St.3d at 634-35). "[T]he provocation must be `sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" Id. (quoting Shane, 63 Ohio St.3d at 634-45).
 {¶ 63} In Deem, the court determined that the provocation was not reasonably sufficient to bring on sudden passion or a fit of rage. The court concluded, as a matter of law, that a stormy relationship between the parties and the victim's alleged bumping of the defendant's car did not constitute sufficient provocation. Subsequent cases have likewise held that a victim's pushing or punching does not constitute sufficient provocation. See Statev. Koballa, Cuyahoga App. No. 82013, 2003-Ohio-3535 (concluding that sufficient provocation did not exist when the victim grabbed the defendant by the testicles and the arm); State v. Poe (Oct. 6, 2000), Pike App. No. 00CA9 (concluding that the victim's conduct in approaching the defendant with a hammer and stating "come on" did not constitute sufficient provocation); State v.Pack (June 20, 1994), Pike App. No. 93CA525 ("We find that a mere shove and a swing (which appellant by his own testimony ducked) are insufficient as a matter of law to constitute serious provocation reasonably sufficient to incite or arouse appellant into using deadly force.").
 {¶ 64} In the case at bar, the evidence does not sufficiently show that the victim seriously provoked Evans so as to cause a sudden fit of passion or rage. As a matter of law, hitting another person does not constitute sufficient provocation to bring about a sudden passion or fit of rage. Furthermore, Evans' contention that the victim's throwing of a shop-vac at him constitutes sufficient provocation is unavailing. Evans admits that after the victim hit him with the shop-vac, he left the residence. Thus, any provocation that may have existed dissipated once he left the residence. Upon his return, the victim's "smacks" did not constitute sufficient provocation. Because Evans cannot show that the victim's alleged provocation was reasonably sufficient to bring on a sudden passion or fit of rage, he was not entitled to a voluntary manslaughter instruction.
 {¶ 65} Accordingly, we overrule Evans' third assignment of error.
 IV. {¶ 66} In his fifth assignment of error, Evans argues that the trial court committed plain error by failing to give a limiting instruction on his prior arrests, convictions, and pending criminal charges. He recognizes that the court gave an instruction on his prior prison and jail terms, but it did not instruct the jury on his prior arrests, convictions, and pending criminal charges.
 {¶ 67} Because Evans did not object to the court's instruction, and indeed, defense counsel expressed satisfaction with the court's charge, we may review it only for plain error. A jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. See Long, supra.
 {¶ 68} Regarding the admission of prior convictions into evidence, the Ohio Supreme Court has observed: "The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule. The undeniable effect of such information is to incite the jury to convict based on past misconduct rather than restrict their attention to the offense at hand." State v.Allen (1987), 29 Ohio St.3d 53, 55, 506 N.E.2d 199. Even when such evidence is properly before the jury, the trial court must consider its prejudicial effect. Evid.R. 609(A)(2). When the prior conviction is for the same crime with which a defendant is presently charged, the risk of unfair prejudice is greater. The natural tendency of prior conviction evidence in this situation is to instill in the minds of the jurors the idea that "`if he did it before, he probably did it this time.'" State v. Goney
(1993), 87 Ohio App.3d 497, 502, 622 N.E.2d 688, quoting Gordonv. United States (C.A.D.C. 1967), 383 F.2d 936, 940. Therefore, "`those convictions which are for the same crime should be admitted sparingly.'" Id. To counteract the prejudicial tendency of such evidence, "the trial court should immediately instruct the jury concerning the limited purpose for which the evidence is being offered." Goney, 87 Ohio App.3d at 503; State v. Whited
(Oct. 20, 1983), Cuyahoga App. No. 46586; see, also, State v.Boyle, Portage App. Nos. 2003-P-0027, 2003-P-0028, 2003-P-0029,2004-Ohio-1531.
 {¶ 69} In Schaim, 65 Ohio St.3d at 61, fn. 9, the court refused to conclude that a trial court commits plain error by failing to give a limiting instruction regarding other acts evidence. The court stated: "The defendant also claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney. We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested." Id.
 {¶ 70} Thus, based upon Schaim, we decline to recognize the court's failure to give a limiting instruction as plain error, especially in light of the overwhelming evidence of Evans' guilt. Cf. State v. Boykin, Montgomery App. No. 19896, 2004-Ohio-1701.
 {¶ 71} Accordingly, we overrule Evans' fifth assignment of error.
 V. {¶ 72} In his sixth assignment of error, Evans contends that the court abused its discretion by admitting hearsay statements. He first asserts that the statements were not admissible as statements against interest because this rule applies only when the declarant is unavailable. Next, he argues that the statements were not relevant because he did not deny that he caused the victim's death.
 {¶ 73} Evid.R. 801(D)(2)(a) provides that a statement is "not hearsay" if it "is offered against a party and is * * * his own statement * * *." See, also, State v. Leonard,104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 105. Thus, "[a] defendant's own out-of-court statements, offered against him at trial, are not hearsay." Id. at ¶ 112.
 {¶ 74} Here, the statements of which Evans complains were his own statements. The state offered them against him at trial. Thus, they are not hearsay subject to exclusion, as Evans claims, and the trial court did not err by allowing them into evidence.
 {¶ 75} Evans' assertion that the statements were inadmissible because they were irrelevant is likewise unavailing. The evidence helped defeat Evans' claims that his conduct did not constitute the crime of murder by showing his callousness over the victim's death. The evidence tended to show that he had no remorse and that he did not somehow accidentally or in a sudden fit of passion or rage cause the victim's death. The evidence helped refute his account of the circumstances surrounding the victim's death. Therefore, the statements were relevant, and the trial court did not abuse its discretion by admitting them.
 {¶ 76} Accordingly, we overrule Evans' sixth assignment of error.
 VII. {¶ 77} In his seventh assignment of error, Evans asserts that multiple errors occurred that deprived him of a fair trial.
 {¶ 78} Separately harmless errors may violate a defendant's right to a fair trial when they are considered together. Statev. Madrigal (2000), 87 Ohio St.3d 378, 397, 721 N.E.2d 52. In order to find "cumulative error" present, we must find that multiple errors were committed at trial. Id. at 398. We must then find a reasonable probability that the outcome would have been different but for the combination of the separately harmful errors. State v. Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1353. However, "`errors cannot become prejudicial by sheer weight of numbers.'" State v. Bryan, 101 Ohio St.3d 272,2004-Ohio-971, 804 N.E.2d 433, at ¶ 211, quoting State v. Hill
(1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068.
 {¶ 79} In the case at bar, the only error we recognized is the court's decision to restrain Evans. Thus, because we have not found multiple errors, the cumulative error doctrine cannot apply.
 {¶ 80} Accordingly, we overrule Evans' seventh assignment of error.
 VIII. {¶ 81} In his pro se arguments, Evans asserts that the trial judge was biased because of his alleged relation to the victim's family and law enforcement officers who investigated the murder. He claims that there was crime scene tampering and neglect, perjury, and "hindrance of legal process." He claims that someone must have placed the hairs in the victim's hand. He asserts that Detective Cassidy's statement that dark brown hair was recovered from the victim's hand is perjury. He claims the victim never pulled his hair. Evans argues that someone must have tampered with the victim's body because the crime scene photos did not show marks on the victim's neck, while the photos from the coroner's officer had red marks on the victim's neck. He claims "crime scene neglect" because the investigators did not test the shop-vac for traces of his blood. He claims that Detective Debbie Brewer and Detective Charles stated that Detective Lynn Brewer "never took part in any evidence whatsoever." He claims that the DNA swab sheet shows that Detective Lynn Brewer performed the swab and collected hand and palm prints. He asserts: "[W]ithout aide of a special investigator, I cannot substantiate my theory that it was Lynn Brewer, Det. whom overseen the evidence tampering. He arrived at the station approx. 2-3 hrs. into my video interview. This is when he performed the D.N.A. swab and prints."
 {¶ 82} Nothing in the record supports the argument that the trial court judge was biased because of an alleged relation to the victim's family or law enforcement officers. In fact, the trial court judge announced that he had no relation to the victim's family.
 {¶ 83} Next, nothing in the record supports the arguments (1) that someone tampered with the crime scene by placing hairs in the victim's hand, or (2) that the victim's body must have been tampered with because the crime scene photos did not show red marks on her neck but the coroner's photos did.
 {¶ 84} Evans' assertion that the law enforcement officers did not properly process the crime scene because they did not test a shop-vac for traces of blood is meritless. The investigating officer stated that he did not observe anything of evidentiary value on the shop-vac. Thus, he possessed no reason to test it and Evans cannot show that the officers failed to properly process the crime scene.
 {¶ 85} Evans also appears to contend that some of the investigating officers were biased. Nothing in the record supports this claim.
 {¶ 86} Furthermore, to the extent Evans' arguments rest upon evidence outside the record, we cannot consider them. See Statev. Cooperrider (1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452;State v. Miller (Mar. 16, 2001), Ross App. No. 00CA2555.
 {¶ 87} Therefore, we overrule all of Evans' pro se arguments. Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, J. and McFarland, J.: Concur in Judgment and Opinion.
Abele, J.: Concurs in Judgment Only.