DECISION AND JUDGMENT ENTRY
{¶ 1} Martha Knittel worked as a branch manager for U.S. Bank until her termination in 2004. She brought this action against U.S. Bank as well as James Barrett and Robin Frasure, her superiors, alleging that Barrett and Frasure orchestrated her termination in revenge for Knittel's prior report to superiors regarding rumors of Frasure's drug abuse. On U.S. Bank's motion, the trial court excluded all reference to the alleged drug use. Knittel now appeals this order, arguing that evidence of the report was admissible to allow Knittel to show why Frasure and Barrett, who allegedly were having a sexual affair, had a motive to discriminate and retaliate against her. However, Knittel did not proffer any evidence to show Frasure or Barrett were aware of Knittel making this report before terminating her employment, and the evidence in the record supports U.S. Bank's representations at trial that neither Frasure nor Barrett were aware of Knittel's role in the report until after Knittel filed this action. Therefore, the trial court *Page 2 
had discretion to exclude the report on relevancy grounds. Furthermore, five years passed between the report and the adverse action against Knittel. Given this remoteness, the trial court did not abuse its discretion in finding that the potential prejudice of the allegations of drug abuse substantially outweighed the report's value in showing animus against Knittel. Therefore, we affirm the judgment below.
 I. Facts {¶ 2} Martha Knittel worked for U.S. Bank, managing its branch in Portsmouth, Ohio, from 1991 until 1998 and its branch in Wheelersburg, Ohio, from 1998 until 2004. Defendant-Appellee Robin Frasure worked under Knittel as the assistant manager of the Portsmouth branch from 1992 until 1998, and U.S. Bank made her branch manager there in 1998 following Knittel's transfer to the Wheelersburg branch. Subsequently, U.S. Bank promoted Frasure to lead manager for the area, and Knittel then reported to Frasure. Defendant-Appellee James Barrett was the Regional President for U.S. Bank during these time periods, with authority over both Knittel and Frasure.
 {¶ 3} In March 2004, U.S. Bank received calls on its anonymous "Ethics Line" alleging that Knittel and another employee at the Wheelersburg branch had given unearned incentive credits to a part-time teller. According to U.S. Bank, an investigation by its Human Resources Department found that certain employees had received high incentive credits and that Knittel had authorized the opening of accounts with amounts less than the minimum allowed by U.S. Bank's policies. The Human Resources Department employees contacted Frasure, Knittel's superior, and together they went to the branch to interview employees and examine branch records. According to U.S. Bank, Knittel failed to provide proper guidance and leadership to *Page 3 
branch employees, and "incentive fraud" had occurred at the branch. U.S. Bank relieved Knittel of her duties pending the investigation, and, according to U.S. Bank, it terminated her employment days later for issues related to incentive fraud, violations of U.S. Bank's code of ethics, and lapses in leadership. According to Knittel, prior to her termination, Frasure told her husband that Knittel had been fired for incentive fraud, a statement that was repeated by a mutual friend at Knittel's husband's place of employment.
 {¶ 4} Knittel brought this action against U.S. Bank, Barrett, and Frasure (collectively "U.S. Bank") alleging a hostile work environment based on gender, intentional infliction of emotional distress, invasion of privacy, defamation, and negligent retention. Before the case went to trial, U.S. Bank moved in limine to exclude any reference to allegations that Frasure had used illegal drugs. Knittel argued that she had reported Frasure's drug use to her supervisor, Barb Coleman, and to Human Resources, and she explained that the reports had been channeled to Barrett. Knittel alleged that Barrett and Frasure had engaged in a sexual affair, and she argued that her report to superiors about Frasure's drug use led Barrett and Frasure to retaliate against her. Specifically, Knittel argued that her termination was pretextual, alleging that Barrett and Frasure sought revenge against Knittel for making the report. The trial court initially ruled that it would exclude evidence of Frasure's alleged drug use because of the lack of direct evidence proving she had used drugs. At trial, Knittel proffered evidence that Knittel would have testified on direct examination that she had reported Frasure's alleged drug use to her superiors. The trial court again excluded the evidence of Knittel's report, finding that the allegation of drug use was based on only innuendo and *Page 4 
rumor and that admission of that fact was "far too prejudicial to let in." The case continued, and the jury found for U.S. Bank on all claims. The trial court entered a judgment in U.S. Bank's favor, and Knittel now brings this appeal.
 II. Assignments of Error {¶ 5} Knittel presents one assignment of error:
 THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE AND TESTIMONY REGARDING ALLEGED DRUG USE OF DEFENDANT-APPELLEE, FRASURE, WHERE THE PROFERRED EVIDENCE, INCLUDING REDACTED EXHIBITS, WOULD HAVE SHOWN THAT PLAINTIFF WAS FOLLOWING THE EMPLOYER'S POLICIES IN REPORTING THE ALLEGED DRUG USE AND WOULD HAVE ESTABLISHED "MOTIVE" FOR DEFENDANTS-APPELLEES' SUBSEQUENT DISCRIMINATION AND RETALIATION AGAINT PLAINTIFF-APPELLANT.
 III. Standard of Review {¶ 6} The admission or exclusion of evidence is within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of the syllabus. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd. (1992),63 Ohio St.3d 498, 506, 589 N.E.2d 24. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1990),57 Ohio St.3d 135, 138, 566 N.E.2d 1181, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301. *Page 5 
 IV. Exclusion of Evidence of Frasure's Alleged Drug Use {¶ 7} Knittel argues that the trial court erred in concluding that she had to produce direct evidence of Frasure's drug use before such evidence would be admitted and in finding that evidence of the report of prior drug use was too prejudicial to admit.
 {¶ 8} We begin our analysis with the principle that, "[generally, all relevant evidence is admissible." State v. Evans, Scioto App. No. 05CA3002, 2006-Ohio-2564, at ¶ 51, citing Evid. R. 402. Evid. R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Knittel made the following proffer of evidence during trial:[1]
 Just pursuant to the Judge's prior order excluding testimony about alleged substance abuse by Robin Frasure. I just wanted to proffer for the record that Martha Knittel, in her direct testimony, would have testified that she did complain to HR and to her direct supervisor about alleged drug use pursuant to what she believed to be the reporting policy of the bank. * * *
 Well, and obviously the only reason we would proffer this is not for the truth of the matter that she was or was not doing drugs; but that Martha Knittel did complain about rumors and the performance issues that she saw with Robin during this time period because she thought that that was the applicable policy that she was supposed to report to somebody.
 {¶ 9} Importantly, Knittel did not proffer any evidence that either Frasure or Barrett, Frasure's superior and alleged paramour, were aware of Knittel's report before they took any purportedly discriminatory or retaliatory action against her. Knittel argues that her report bringing Frasure's alleged drug problem to U.S. Bank's attention was one of the contributing reasons for Barrett and Frasure's decision to retaliate against her. *Page 6 
However, U.S. Bank represented to the trial court that neither Barrett nor Frasure became aware that Knittel had made the report until after Knittel filed her lawsuit and, therefore, after any alleged retaliation had occurred. Furthermore, the record supports U.S. Bank's representation. Barrett testified in his deposition that, while aware that a report had been filed asserting that Frasure had a drug problem, he was not aware that Knittel had been responsible for that report until he received a copy of the complaint. Similarly, Frasure stated in her deposition that she was unaware of the report before being served with Knittel's compliant. There is no evidence in the record that Knittel's name was associated with the report when the Human Resources Department and Knittel's supervisor communicated the report to Barrett. The record does not contain any testimony from the people to whom Knittel made the report. At most, Knittel's deposition shows that Barrett was aware the report had been made, but Knittel does not state that her name was associated with the report. Thus, we do not believe that the proffered testimony tends to prove what is ultimately the fact of consequence at issue: whether Frasure and Barrett had a motive to retaliate against Knittel. Because there is no evidence or proffer of evidence showing that Barrett or Frasure was aware that Knittel made the report, it was not relevant and the trial court did not abuse its discretion in excluding it.
 {¶ 10} Moreover, the record suggests that the latest that the report could have been made was in 1998, five to six years prior to the acts of discrimination and retaliation alleged in the complaint.[2] Even if we were to assume that Barrett and *Page 7 
Frasure were aware that Knittel was responsible for the report, given the remoteness in time between the report and the alleged discriminatory and retaliatory acts, this evidence is only minimally probative of animus against Knittel. See Hall v. Banc One Management Corp., Franklin App. No. 04AP-905, 2006-Ohio-913, at ¶ 47 (noting in a case alleging retaliation that "an interval of two months between complaint and adverse action `so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link'" (quoting Kipp v. Missouri Highway Transp. Comm. (8th Cir. 2002), 280 F.3d 893, 897), reversed on other grounds by114 Ohio St.3d 484, 2007-Ohio-4640, 873 N.E.2d 290; Crable v. Nestle USA,Inc., Cuyahoga App. No. 86746, 2006-Ohio-2887, at ¶ 47 (holding that there was no inference of retaliation where a lawsuit brought against the defendant was brought more than three years before the allegedly discriminatory activities allegedly motivated by that lawsuit). Given the minimal probative value of the report of alleged drug use and the bad light that would be cast on Frasure by the unproven rumors of drug use, we cannot say that the trial court abused its discretion in excluding this evidence on the basis of undue prejudice. State v.Roquemore (1993), 85 Ohio App.3d 448, 462, 620 N.E.2d 110 ("The primary effect of the evidence is to cast the defendant in a bad light. Therefore, the evidence was prejudicial to [the defendant]."); see alsoBoom v. Robinson (2001), 9th Dist. No. 20314, unreported (holding that the admission of evidence that a physician was addicted to drugs at the time of a medical procedure was unduly prejudicial considering the lack of *Page 8 
evidence of impairment at the time of the procedure as well as the negative social mores associated with drug abuse).
 {¶ 11} Accordingly, we conclude that the trial court had the discretion to exclude evidence of the report regarding Frasure's alleged drug use, and we affirm its judgment.
 JUDGMENT AFFIRMED. *Page 9 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] We cannot tell from the materials before us whether any "redacted exhibits" were actually proffered to the trial court during its consideration of the motion in limine, and Knittel does not give any citations to the record regarding or any descriptions of any such exhibits. Therefore, we limit our consideration of the issue to the proffered evidence that appears in the partial trial transcript filed by Knittel.
[2] Knittel does not specifically allege that her transfer to the Wheelersburg branch in 1998 was an act of discrimination or retaliation. Although Knittel suggested in her deposition that, sometime around 1998, Barrett had made offensive sexual comments to her and that, after she rebuked him, he began treating her differently, Knittel dropped her claim alleging quid pro quo sexual harassment before trial. Because Knittel has not filed a complete trial transcript with this Court, it is not exactly clear what acts constituted the alleged discrimination or retaliation. Knittel's brief suggests that the termination was the discrimination and retaliation. *Page 1