DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Lorenzo L. Jones, appeals his conviction for robbery and aggravated robbery in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm, in part, reverse, in part, and remand for resentencing in accordance with State v. Foster (2006),109 Ohio St.3d 1, 2006-Ohio-856.
 {¶ 2} On January 4, 2004, church services had just ended at St. Stephen's AME Church in Toledo, Ohio, when a man wearing a ski mask came in through the back and demanded money. He then walked down the aisle, grabbed a nine year-old girl, put a gun to her head and demanded $500. After the parishioners gave him their money, he released the girl and left the church. Largely based on an identification made by a parishioner who saw appellant outside of the church before the robbery, police arrested appellant for the crime. On November 3, 2004, he was indicted on one count of aggravated robbery, a first degree felony, and robbery, a second degree robbery. Following a jury trial he was found guilty on both counts and sentenced to 19 years in prison. Appellant now appeals setting forth the following assignments of error:
 {¶ 3} "I. The trial court erred in overruling Jones' motion to suppress the identification of him made from a photo array. And, the trial court erred by allowing the same witness to make an in-court identification.
 {¶ 4} "II. The verdict was against the manifest weight of the evidence and constituted a miscarriage of justice.
 {¶ 5} "III. The trial court should have granted Jones' Rule 29 motion for judgment of acquittal because there was insufficient credible, competent evidence to prove each element of the crimes charged beyond a reasonable doubt.
 {¶ 6} "IV. The trial court erred by allowing prejudicial, inadmissible and incorrect testimony that the weapon from the robbery had been recovered from Jones' residence.
 {¶ 7} "V. The trial court erred by admitting evidence of a fight between Jones and the informant witness at the county jail, particularly because Jones made no admissions during the altercation and it was completely uncorroborated testimony.
 {¶ 8} "VI. Jones' sentence is unconstitutional pursuant to State v.Foster and violates his right against double jeopardy because the offenses should have been merged.
 {¶ 9} "VII. The photo array should not have been admitted as evidence because no foundation was laid for its use, and no chain of custody established. And, trial counsel was ineffective for failing to object to its admission."
 {¶ 10} "VIII: The prosecutor made improper remarks during his closing arguments, including denigrating the case investigator, without any basis in the record to support this."
 {¶ 11} In his first assignment of error, appellant contends that the court erred in denying his motion to suppress evidence of his pre-trial identification. Specifically, appellant contended that he was identified from a suggestive and unreliable photo array.
 {¶ 12} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness.State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594.
 {¶ 13} Due process requires suppression of an out of court identification if the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Davis (1996), 76 Ohio St.3d 107,112, citing State v. Waddy (1992), 63 Ohio St. 3d 424, 438; Manson v.Brathwaite (1977), 432 U.S. 98, 116; Neil v. Biggers (1972),409 U.S. 188, 196-198. Suppression is warranted where the confrontation procedure employed and the unreliability of the witness' identification gives rise to a "substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384. No due process violation occurs when an identification was not tainted by a suggestive confrontation procedure, but is "instead the result of observations at the time of the crime." State v. Davis, supra at 112, citing Coleman v.Alabama (1970), 399 U.S. 1, 5-6. Additionally, if an out-of-court identification procedure is unnecessarily suggestive, the in-court identification could be suppressed as violative of due process if it is "tainted" by the out-of-court identification. Stovall v. Denno (1967),388 U.S. 293 (overruled on other grounds by Griffith v. Kentucky (1988),179 U.S. 314).
 {¶ 14} Even if the out-of-court confrontation procedure was unduly suggestive, however, the identification does not violate due process and is therefore admissible if the identification is reliable given the "totality of the circumstances." State v. Moody (1978),55 Ohio St.2d 64, 67. The factors to be considered under the totality of the circumstances, to determine an identification's reliability, articulatedin Neil v. Biggers, supra, "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200.
 {¶ 15} A suppression hearing commenced on April 28, 2005. Detective Lawrence Anderson of the Toledo Police Department testified that in 2004, someone contacted him and suggested that appellant was the one who robbed St. Stephen's AME Church. Based on this information, he put together a computer generated photo array consisting of six photos. One of the photos was of appellant and the other five photos were of men with similar physical characteristics of appellant. Detective Lawrence then contacted a possible witness, Jacqueline Turner, who may have seen appellant before the robbery and before he put on the ski mask. Eleven months after the offense, Detective Lawrence went to her home. Turner picked out appellant's photo and identified him as a man she had seen outside the church right before the robbery.
 {¶ 16} Jacquelyn Turner testified that she worked as a high school guidance counselor for The Toledo Public Schools for 35 years. In court she identified appellant as a former student at her school. On January 4, 2004, she attended a church service at St. Stephen's. As she was leaving the church, she saw a young man on the sidewalk in front of the church. Turner testified that the two made eye contact and she never took her eyes off him until she passed him. The man continued walking and headed towards the lawn. Turner's car was parked directly in front of the church. Turner did not know the man's name but she knew she recognized him from school as she "never forgets a face." Turner hurried to her car and left. Approximately ten minutes later, she found out about the robbery and returned to the church.
 {¶ 17} On October 20, 2004, Detective Lawrence came to Turner's house and showed her some pictures. She picked appellant's photo out of the array because that was the man she saw standing in front of the church on the day of the robbery. Turner admitted that she was reluctant to get involved in the robbery investigation but her husband, a retired Toledo Police Officer, finally convinced her to cooperate.
 {¶ 18} Appellant contends that the photo array was unduly suggestive in that appellant is the only one noticeably wearing a jail jumpsuit. We disagree. All six men in the photo array are wearing brown shirts. The only difference is that appellant and another man are wearing white t-shirts underneath. Appellant also contends that Turner did not have enough time to look at the man outside of the church to give a reliable identification of him. We too disagree on this point. Although it was only for a few seconds, Turner testified that she and the man locked eyes as she walked to her car. While the passage of time between the initial encounter and Turner's identification is far from ideal, there are other factors which bolster the reliability of her identification. She did not hesitate when selecting appellant's photo 11 months later and she was already somewhat familiar with appellant's face when she saw him at the church. Based on the totality of the circumstances, we must conclude that the procedures used were not unduly suggestive of appellant's guilt, and that Turner's identification of appellant, both out of court and in court, was reliable. Appellant's first assignment of error is found not well taken.
 {¶ 19} In his second assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. The "weight of the evidence" refers to the jury's resolution of conflicting testimony.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and " * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 20} Appellant's trial commenced on May 31, 2005. Toledo police officer Pamela Ford testified that on January 4, 2004, she was dispatched to a robbery at St. Stephen's AME Church. There she found approximately 20 scared parishioners. They told her that an African American male wearing a ski mask had entered the church, put a gun to the head of a little girl and announced that if he was not given money, somebody would die. Ford testified that Turner told her she could probably recognize the robber if she saw some pictures of him.
 {¶ 21} Ten year-old Riviara Darrington testified that she was at the church the day it was robbed. Riviara was the child who was grabbed by the gunman. She testified that the gunman was wearing a dark brown jacket and a black ski mask. Because she did not see the gunman's face, she testified that she could not identify him.
 {¶ 22} Aarron Darrington, Riviara's 11 year-old brother, testified that he too was at church the day of the robbery. He remembered that the gunman wore a black ski mask and a brown or black leather coat. Darrington estimated the gunman's height to be "about 5-10." He was unable to identify the gunman because of the ski mask.
 {¶ 23} Another parishioner, Lela Traynum, testified that the gunman was wearing a tan, cloth, parka type coat. She was unable to identify the gunman because of his ski mask.
 {¶ 24} Reverand Thomas Fant testified that he is the pastor at St. Stephen's church. He testified that the gunman wore a dark brown or black jacket. He also testified that he could not identify the gunman because he never saw his face.
 {¶ 25} Mattie Hogan testified that she was at the church that day. Because the robber was wearing a ski mask, she only saw his eyes and lips. She did, however, closely watch him for the 25 minutes he was present in the church. She testified that the robber had very distinctive large lips and that he was approximately five feet, eleven inches. In court, she identified appellant as the man who robbed her church based on the appearance of his lips and the fact that he had the same body type as the robber.
 {¶ 26} Jacqueline Turner took the stand and recounted her brush with appellant in front of the church. She testified that as she was leaving in her car, she noticed that appellant was standing under a bus stop sign in front of the church. She remembered that he was wearing a dark coat and a hat that, as she put it, "stuck out like a sore thumb" because it had a large bulge at the top. She testified that ten minutes after she left the church, she placed a cell phone call to her son who was still in the church. It was then that she found out the church had been robbed.
 {¶ 27} Toledo police sergeant Keefe Snyder testified that he interviewed appellant after appellant turned himself in to the police in February 2005. Appellant explained that he knew he had been falsely accused of committing the church robbery and he wanted to clear his name. According to appellant, he could not have committed the robbery because he was in jail on that day and he did not even know where the church was located. Appellant believed he had been falsely accused of the robbery by Ivory Carter because appellant was involved in a dispute with Ivory Carter's mother. Snyder testified that he asked appellant to tell him what he knew about the robbery. Appellant said that everything he knew about the robbery he had read in the police reports. Appellant stated that the gun used was a .22 caliber revolver. This was a significant fact to Snyder in that the specific caliber of the gun was never mentioned in any of the police reports. Snyder asked appellant if he knew the witness from outside the church. Appellant knew her name was Turner and then added that he once knew a Miss Turner who was a guidance counselor at his high school. Snyder also found this response significant in that the police reports made no mention of Turner's profession. Finally, appellant, in reference to Turner, announced "lady saw me across the street." Again, Snyder testified, nowhere in the reports is it alleged that Turner saw appellant from across the street.
 {¶ 28} Ivory Carter testified that he had grown up with appellant. Carter testified that appellant told him he committed the church robbery. Carter acknowledged that he was currently incarcerated for burglary, that he had a lengthy criminal record and that he had received a $6,000 reward for telling the police that appellant committed the church robbery. He maintained, however, that his only motivation in going to the police was his disgust over appellant's actions in threatening a child with a gun. He also testified that while in jail, he was involved in a physical altercation with appellant where appellant had accused Carter of being a police snitch.
 {¶ 29} Appellant's grandmother, Donna Smith, took the stand for the defense and testified that appellant's front teeth are covered in metallic silver and that his teeth have been that way for at least five years. No other witnesses mentioned the gunman's teeth.
 {¶ 30} Appellant contends that there was a lack of credible evidence to place him at the robbery. First, appellant challenges the credibility of Ivory Carter. The trier of the facts, in this case the jury, chose to believe the witness, Ivory Carter. This is a matter of credibility within the province of the trier of facts, not for this court upon appeal. On review, we cannot say that the jury clearly lost its way or perpetrated a manifest miscarriage of justice.
 {¶ 31} Next, appellant contends that none of the parishioners could identify him as the robber when, in fact, one of the parishioners, Mattie Hogan, did identify appellant in court as the robber.
 {¶ 32} Finally, we must look at the testimony of Jacqueline Turner. In doing so we are mindful of the fact that, "[Identity may be established by direct evidence, but direct evidence of identification is not required; circumstantial evidence may be sufficient to establish the identity of the accused as the person who committed the crime.* * *."State v. Scott (1986), 3 Ohio App.2d 239, 244-45. We find that in addition to the above testimony, Turner's testimony provided strong circumstantial evidence of appellant's guilt. She knew who appellant was, she saw him near the church entrance mere minutes before the robbery and her description of him was generally consistent with what the victims remembered. Weighing all the evidence and reasonable inferences, we find that the jury could reasonably conclude that appellant was the perpetrator of these crimes. Appellant's second assignment of error is found not well-taken.
 {¶ 33} In his third assignment of error, appellant contends that the court erred in denying his Crim. R. 29 motion for acquittal. When reviewing the denial of a Crim.R. 29(A) motion, an appellate court evaluates whether the evidence is such that reasonable minds can differ as to whether each material element of the crime charged has been proven beyond a reasonable doubt. See State v. Bridgeman (1978),55 Ohio St.2d 261, 263. The standard is the same as is used to review a sufficiency of the evidence claim. State v. Carter (1995), 72 Ohio St.3d 545, 553. The court must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 390, (Cook, J., concurring); State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also, State v. Eley (1978),56 Ohio St.2d 169, State v. Barns (1986), 25 Ohio St.3d 203.
 {¶ 34} Appellant was convicted of aggravated robbery with a firearm specification, a violation of R.C. 2911.01(A)(1). The elements of the offense are as follows:
 {¶ 35} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 36} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *"
 {¶ 37} Appellant was also convicted of robbery, a violation of R.C.2911.02(A)(2). The elements of the offense are as follows:
 {¶ 38} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following
 {¶ 39} "* * *
 {¶ 40} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; * * *"
 {¶ 41} In this case, the jury heard testimony that appellant was outside the church minutes before the robbery occurred. Witnesses testified that a man brandished a gun and demanded $500. Witnesses testified that they gave the man money. Jacqueline Turner identified appellant as the man in front of the church. Mattie Hogan identified appellant as the robber. Ivory Carter testified that appellant told him he had robbed the church. We conclude that a rational factfinder, viewing the evidence in a light most favorable to the state, could have found that the state had proved beyond a reasonable doubt that appellant had committed aggravated robbery and robbery. Therefore, the evidence presented was legally sufficient to sustain the guilty verdicts and the trial court did not err in overruling Richards's Crim.R. 29(A) motion. Appellant's third assignment of error is found not well-taken.
 {¶ 42} Appellant's fourth and fifth assignments of error will be addressed together. Appellant contends that he was prejudiced when the trial court allowed certain testimony of Ivory Carter. First, Carter testified that appellant told him that the police had conducted a search warrant of his residence and had recovered the gun used in the robbery. Appellant's counsel objected to the testimony and the trial court overruled her objection. Appellant also contends he was prejudiced when Carter was allowed to testify that he was involved in a jail altercation with appellant wherein appellant called him a snitch.
 {¶ 43} The admission or exclusion of evidence lies in the sound discretion of the trial court, State v. Sage (1987), 31 Ohio St.3d 173,180, and the judgment of the trial court will not be reversed absent a clear showing of an abuse of discretion. State v. Hymore (1967),9 Ohio St.2d 122, 128. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 44} Even if we assume the trial court erred in allowing this testimony, the error did not prejudice appellant. Under Evid R.103(A), and Crim.R. 52(A), error is harmless unless substantial rights of the defendant are affected. State v. Hicks (Aug. 16, 1991), 6th Dist. No. L-83-074. For nonconstitutional errors, the test is whether "there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside." State v. Cowans (1967),10 Ohio St.2d 96, 104. Where constitutional error in the admission of evidence exists, "such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt." State v. Williams (1983), 6 Ohio St.3d 281, at paragraph six of the syllabus.
 {¶ 45} In this case, the jury had already heard a witness identify appellant as the perpetrator and the jury had heard that appellant confessed to the crime. This evidence alone supports the jury's guilty verdict. Finding no abuse of discretion, appellant's fourth and fifth assignments of error are found not well-taken.
 {¶ 46} In his sixth assignment of error, appellant contends the court violated the Double Jeopardy Clause of the constitution in finding that aggravated robbery and robbery are not allied offenses of similar import. This argument has been waived because no objection was made at the sentencing hearing concerning allied offenses of similar import. Questions regarding allied offenses of similar import are waived if not properly raised before the trial court. State v. Comen (1990),50 Ohio St.3d 206, 211, citing State v. Williams (1977), 51 Ohio St.2d 112,116-117.
 {¶ 47} Appellant next contends that the trial court's imposition of non-minimum, consecutive sentences violated his Sixth Amendment rights pursuant to Blakely v. Washington (2004), 542 U.S. 296. Appellee concedes this point. See State v. Foster (2006), 109 Ohio St.3d 1,2006-Ohio-856, paragraph one of the syllabus. Accordingly, appellant's sixth assignment of error is found not well-taken in part, and well-taken in part. In conformity with Foster, at ¶ 106, the sentence imposed is vacated and this matter is remanded to the trial court for a new sentencing hearing.
 {¶ 48} In his seventh assignment of error, appellant contends he was denied effective assistance of counsel. To establish an ineffective assistance of counsel claim, appellant must show that counsel's performance fell below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus (Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 followed.) "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, supra, at paragraph three of the syllabus. Ohio law presumes a licensed attorney is competent. Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Bradley, supra, at 142, quoting Strickland, supra, at 689. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. State v. Phillips, 74 Ohio St.3d 72,85, 1995-Ohio-171. Even if the wisdom of an approach is debatable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. Finally, reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners.Strickland, supra at 689; State v. Keenan, 81 Ohio St.3d 133, 152,1998-Ohio-459.
 {¶ 49} Appellant contends that his counsel was ineffective in that she did not object to the admission of the photo array without a proper foundation. The admission of physical evidence is a matter within the sound discretion of the trial court. State v. Kinley (1995),72 Ohio St.3d 491, 497. We will not reverse a decision to admit evidence unless we find that decision to be an abuse of discretion. Id.
 {¶ 50} Evid.R. 901 provides the method by which evidentiary materials may be authenticated, and states in relevant part:
 {¶ 51} "(A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 {¶ 52} "(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 {¶ 53} "(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be."
 {¶ 54} The term "evidence" refers to any species of proof. Proper authentication identifies the particular species concerned in relation to the probative purpose for which it is offered. The "sufficient to support a finding" requirement in Evid.R. 901(A) merely means that authentication must be sufficient to create a foundation from which the jury can find that the article is proof of what its proponent claims it to be. The standard itself is not rigorous, and its low threshold reflects an orientation of the rules toward favoring the admission of evidence. Weissenberger's Ohio Evidence Treatise (1997), Section 901.2.
 {¶ 55} In this case, Jacqueline Turner identified state's exhibit No. 1 as the collection of six photographs Detective Richardson brought to her home on October 20, 2004. She further identified her own signature under appellant's photograph. We find that this testimony was sufficient to establish a foundation for the admission of the photo array. Accordingly, appellant's counsel was not ineffective in failing to object to the admission of the photo array and appellant's seventh assignment of error is found not well-taken.
 {¶ 56} Finally, in his eighth assignment of error, appellant alleges that the prosecutor made improper remarks during his closing argument. First, appellant contends it was improper for the prosecutor to praise the credibility of Jacqueline Turner. Second, appellant contends it was misconduct for the prosecutor to remark that the first detective on the case, Vickie Stevens, had "dropped the ball" when she asked Detective Lawrence to take over the investigation.
 {¶ 57} Parties are granted wide latitude in closing arguments, and the question as to the propriety of these arguments is generally left to the sound discretion of the trial court. State v. Maurer, 15 Ohio St.3d 239,266. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984),14 Ohio St.3d 13, 14.
 {¶ 58} We note that appellant's counsel did not object to the above comments. Generally, this results in waiver of the claimed error on appeal, absent plain error. Cf. State v. Lott (1990), 51 Ohio St.3d 160,167. Plain error exists when it is clear that a defendant would not have been convicted absent the offending conduct. Viewing the record, transcript and evidence in this case in its entirety, we cannot say that appellant would not have been convicted but for the prosecutor's comments during his closing argument. Appellant's eighth assignment of error is found not well-taken.
 {¶ 59} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded to said court for further proceedings in conformity with this decision. Appellee is ordered to pay the costs of this appeal, pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.