DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Hocking County Common Pleas Court judgment of conviction and sentence. A jury found Janice K. Bowers, defendant below and appellant herein, guilty of (1) complicity to commit rape in violation of R.C. 2923.03(A)(2) R.C. 2907.02(A)(1)(b); and (2) two counts of gross sexual imposition in violation of R.C.2907.05(A)(4). *Page 2 
 {¶ 2} Appellant assigns the following errors for review[1]:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT PERMITTED THE PROSECUTION TO CALL MS. BOWERS' CODEFENDANT [sic] TO THE WITNESS STAND FOR HIM TO ASSERT HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION IN FRONT OF THE JURY. THIS ERROR DEPRIVED MS. BOWERS OF HER RIGHTS TO CONFRONTATION AND A FAIR TRIAL, AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10
AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO PRESENT EVIDENCE ESTABLISHING THAT MS. BOWERS' CODEFENDANT [sic] HAD A PRIOR CRIMINAL RECORD. THIS EVIDENTIARY ERROR DEPRIVED MS. BOWERS OF HER RIGHT TO A FAIR TRAIL, AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION AND CONSTITUTED PLAIN ERROR.
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT MADE NUMEROUS ERRORS IN THE ADMISSION OF EVIDENCE, WHICH WHEN VIEWED CUMULATIVELY, DEPRIVED MS. BOWERS OF HER RIGHT TO A FAIR TRIAL, IN CONTRAVENTION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I
OF THE OHIO CONSTITUTION."
 FOURTH ASSIGNMENT OF ERROR:
 "INSTANCES OF PROSECUTORIAL MISCONDUCT THROUGHOUT THE COURSE OF MS. BOWERS' TRIAL DEPRIVED HER OF HER RIGHT TO A FAIR TRIAL." *Page 3 
 FIFTH ASSIGNMENT OF ERROR:
 "MS. BOWERS' CONVICTIONS WERE AGAINST THE WEIGHT OF THE EVIDENCE."
 SIXTH ASSIGNMENT OF ERROR:
 "THE STATE'S FAILURE TO ARTICULATE DIFFERENTIATION BETWEEN TWO IDENTICALLY WORDED COUNTS IN THE INDICTMENT DEPRIVED MS. BOWERS OF HER RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10
AND 16, ARTICLE I OF THE OHIO CONSTITUTION."
 SEVENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT IMPOSED NONMINIMUM [sic], AND MAXIMUM PRISON TERM(S) AND WHEN IT IMPOSED CONSECUTIVE PRISON TERMS, AS THOSE PRISON TERMS CONTRAVENED THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 3} Appellant is married to Howard Bowers (Bowers) who, prior to June 2004, was incarcerated at the North Central Correctional Institution in Marion.[2] During his incarceration, appellant and her grand-daughters, T.G. (DOB 1991) and I.B. (DOB 1992), made almost weekly visits to the prison. T.G. later revealed that during some of the visits, she sat on Bowers' lap and he discussed "sexual stuff" with her.[3]
 {¶ 4} After Bowers' 2004 release from prison, he resided with his wife (appellant) and her granddaughters. Shortly thereafter, *Page 4 
Bowers and appellant began to sexually assault T.G. The abuse remained unreported until I.B. commented to her foster parents that T.G. had made sexual advances toward her.[4] This prompted the child's foster parents to contact children services which launched an investigation.
 {¶ 5} Subsequently, the Hocking County Grand Jury returned an indictment charging appellant with (1) three counts of complicity to rape in violation of R.C. 2923.03(A)(2) 2907.02(A)(1)(b); (2) one count of rape in violation of R.C. 2907.02(A)(1)(b); (3) one count of sexual battery in violation of R.C. 2907.03(A)(5); (4) two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4); and (5) one count of child endangering in violation of R.C. 2919.22 (B)(5). Appellant pled not guilty to all charges.
 {¶ 6} At the jury trial, the prosecution proceeded on a theory that appellant had "groomed" her granddaughters to have sex with Bowers after his prison release. In this vein, the prosecution introduced evidence to show that while Bowers was incarcerated, he and his wife had "phone sex" and that appellant masturbated in front of her granddaughters. T.G. testified that while Bowers was in prison, her grandmother used breast cups or pumps on her chest and touched her genital area with various sex toys. T.G. further stated that after Bowers' release, he began *Page 5 
to sexually assault her. She described one incident in which both she and her grandmother were in bed and engaged in sexual contact with each other and with Bowers. Despite the various instances of sexual contact, however, T.G. maintained that neither Bowers nor her grandmother had "penetrated" her. In light of the evidence adduced during the trial, the trial court dismissed four counts in the indictment and gave to the jury for their decision counts one, six and seven.[5]
 {¶ 7} At the conclusion of the trial, the jury returned guilty verdicts on all three charges. At sentencing, the trial court concluded that the crimes are among the worst forms of the offense(s) and that minimum sentences would demean their seriousness. Consequently, the court sentenced appellant to serve ten years for complicity to commit rape and four years on each gross sexual imposition charge. Finding that a single prison term did not adequately reflect the seriousness of appellant's conduct, the trial court ordered the sentences to be served consecutively. This appeal followed.[6]
 I {¶ 8} We jointly consider appellant's first and second assignments of error as they both involve appellant's husband's *Page 6 
(Bowers) role at trial. Bowers, the prosecution's first witness, declined to answer almost every question and cited in response hisFifth Amendment right to be free from self-incrimination. Appellant argues that the prosecution's decision to call Bowers as a witness and to ask him questions solely to assert his Fifth Amendment rights unduly prejudiced her and constitutes reversible error. We disagree with appellant.
 {¶ 9} In State v. Dinsio (1964), 176 Ohio St. 460, 200 N.E.2d 467, at the syllabus, the Ohio Supreme Court wrote:
 "In a criminal case, where a claim of a witness that he can not be compelled to testify as a witness because of the privilege of immunity from self-incrimination is properly established, it is error prejudicial to the defendant for the court to permit counsel for the state, by continued questioning of the witness, which questions go unanswered, to get before the jury innuendoes and inferences of facts, conditions and circumstances which the state could not get before the jury by direct testimony of the witness." (Emphasis added.)
Dinsio does not stand for the proposition that the prosecution cannot ask questions of a witness when it is clear that the witness will "take the Fifth." The court clarified that point in Columbus v. Cooper (1990),49 Ohio St.3d 42, 45, 550 N.E.2d 937, and emphasized that the prosecution is merely forbidden from "repeated questioning where reassertion of the privilege was assured." (Emphasis added.) Thus,Dinsio is not violated when questioning is brief and the prosecutor stops asking questions once it becomes clear that the witness will not answer. See e.g. State v. Hale, Portage App. No. 2003-P-75,2004-Ohio-6943, at ¶ 31. *Page 7 
 {¶ 10} In the case sub judice, Bowers' direct examination was brief and encompasses two pages in the trial transcript. The prosecution also conducted a brief re-direct examination, (that spans one and a half pages) in response to the defense cross-examination. Also, the prosecution did not ask Bowers "about the facts in the case" but about his prior conviction and his relationship with appellant. We acknowledge that this information might have been gleaned in other ways or from other sources, but given that Bowers and appellant are inextricably linked in the commission of the charged offenses, we find no "bad faith" on the prosecution's part by calling Bowers as a witness. SeeDinsio, supra at 466 (no indication of "bad faith" on part of the prosecutor who called witness).
 {¶ 11} Appellant next asserts that evidence of Bowers' prior criminal record unduly prejudiced her. The prosecution's theory of the case is that appellant groomed her granddaughters for Bowers' use and sexual gratification. Consistent with that theory, the prosecution adduced evidence to show that appellant frequently took her granddaughters to prison to visit Bowers. During some of these visits, T.G. sat on Bowers' lap and he talked about "sexual stuff." Evidence of Bowers' prior criminal convictions simply explained why he was incarcerated in the first place.
 {¶ 12} Moreover, even if we assume that the trial court erred by admitting this evidence, appellant did not object at the appropriate time. Generally, appellate courts will not consider *Page 8 
any error that counsel could have called, but did not call, to the trial court's attention when the court could have avoided or corrected the error. State v. Peagler (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489;State v. Lott (1990), 51 Ohio St.3d 160, 174. 555 N.E.2d 293. Thus, in the instant case appellant waived all but plain error.
 {¶ 13} Appellant argues that in this case we should recognize plain error under Crim.R. 52(B). We, however, find that argument unavailing. Notice of plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240; State v. Hill (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274. The plain error rule should not be invoked unless, but for the error, the case's outcome would have been different. See State v. Jackson (2001),92 Ohio St.3d 436, 438, 751 N.E.2d 946; State v. Sanders (2001),92 Ohio St.3d 245, 263, 750 N.E.2d 90.
 {¶ 14} In the case sub judice, we are not persuaded that the trial's outcome would have been different had the jury not heard of Bowers' prior criminal record. To reach a different conclusion, we must completely ignore the other evidence adduced at trial, including T.G.'s testimony. We decline to do so.
 {¶ 15} Thus, based upon the foregoing reasons we hereby overrule appellant's first and second assignments of error.
 II *Page 9 {¶ 16} Appellant's third assignment of error asserts that the trial court erred by admitting testimony and other evidence that denied her a fair trial.
 {¶ 17} The cumulative error doctrine acknowledges that separately harmless errors may, when considered together, violate a person's right to a fair trial. See generally State v. Madrigal (2000),87 Ohio St.3d 378, 397, 721 N.E.2d 52; State v. DeMarco (1987), 31 Ohio St.3d 191,509 N.E.2d 1256, at paragraph two of the syllabus. Convictions may be reversed under the cumulative error doctrine if two factors are present: (1) multiple errors, Madrigal, supra at 398; State v. Evans, Scioto App. No. 05CA3002, 2006-Ohio-2564, at ¶ 78; and (2) a reasonable probability that but for the combination of separate harmless errors, the trial's outcome would have been different. Evans, supra at ¶ 78; State v.Thomas (Sep. 21, 2001), Clark App. No. 2000-CA-43.
 {¶ 18} Although appellant has not persuaded us that the evidentiary rulings that she cites are erroneous, if we assume for purposes of argument that they were indeed erroneous, we do not believe that the trial's outcome would have been different had that evidence been excluded. Most of the evidence that appellant cites concerns ancillary matters (e.g. appellant having phone sex with Bowers, masturbating in front of the children or the accusations that initially prompted the investigation). This evidence was not introduced to show that appellant acted in conformity with these other acts, but to establish the *Page 10 
prosecution's theory that appellant groomed her granddaughters for sex with her and her husband long before Bowers' prison release.
 {¶ 19} Moreover, we do not believe that the trial's outcome would been otherwise had the trial court excluded this evidence.
The most compelling evidence in this case came from T.G. who testified about sexual abuse perpetrated by appellant. I.B. corroborated her sister's testimony and further related that she observed through a crack in a door that T.G. engaged in vaginal sex with Bowers. Thus, even assuming that the evidentiary rulings that appellant cites were erroneous, in light of the other evidence, we do not believe that the trial's outcome would have been different if the evidence at issue had been excluded.
Accordingly, based upon the foregoing reasons we hereby overrule appellant's third assignment of error.
 III {¶ 20} In her fourth assignment of error, appellant asserts that prosecutorial misconduct deprived her of a fair trial.
 {¶ 21} The standard for prosecutorial misconduct is whether a prosecutor's remarks are improper and, if so, whether those remarks prejudicially affected an accused's substantial rights. State v.Smith (2000), 87 Ohio St.3d 424, 442, 721 N.E.2d 93; State v. Smith
(1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. The touchstone of the analysis is the fairness of the trial, rather than the prosecutor's culpability. State v. Drummond, 111 Ohio St.3d 14, 854 N.E.2d 1038,2006-Ohio-5084, at ¶ 226; State v. *Page 11 Jackson, 107 Ohio St.3d 300, 839 N.E.2d 362, 2006-Ohio-1, at ¶ 142. Courts should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. SeeState v. Skatzes, 104 Ohio St.3d 195, 819 N.E.2d 215, 2004-Ohio-6391, at ¶ 181.
 {¶ 22} Appellant argues that the prosecutor acted improperly when he called Bowers as a witness and questioned him in such a way that Bowers continually asserted his Fifth Amendment rights.
She also claims that the prosecutor improperly introduced evidence of Bowers' prior criminal convictions. We have already addressed these issues under appellant's first and second assignments of error and determined that valid reasons existed for the introduction of this evidence. Thus, these actions should not be characterized as misconduct.
 {¶ 23} Appellant also asserts that the prosecutor asked improper questions. We need not address each individual instance, however, because even if we assume that a particular question was improper, the questions would constitute harmless error and did not deny appellant a fair trial. Appellant cites several portions of the prosecutor's closing argument and contends that he made improper comments concerning T.G.'s truth and veracity. During closing argument, counsel should not comment on a witness's credibility, see State v. Smith (1984), 14 Ohio St.3d 13,14, 470 N.E.2d 883. We are not persuaded, however, that the prosecutor did make such remarks or comments. *Page 12 
Indeed, our review of the transcript reveals several instances in which the prosecutor affirmed that the jury's function is to determine witness credibility. Appellant also asserts that the prosecutor's editorializing during closing argument constitutes prosecutorial misconduct. As appellant notes, the prosecutor referred to Bowers as a "monster," represented to the jury that appellant wanted them to "disregard evidence" and claimed that appellant wanted the jury to "violate the judge's instructions."
 {¶ 24} A prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious, but to see that justice shall be done. Smith, supra at 14. Neither justice nor professionalism are served when a prosecutor engages in name-calling or editorializing in front of a jury or in pleadings filed with the Court. Name-calling is unacceptable and unprofessional. State v. Stevens, Montgomery App. No. 19572, 2003-Ohio-6249, at ¶ 44; also see State v. Stanley (Jun. 22, 2001), Greene App. No. 2001-CA-14. In this instance, however, it appears that the word "monster" was directed at Bowers, not appellant. We also agree that a prosecutor should not represent to the jury that a defendant wants them to disregard evidence or to violate the court's instructions, and nothing in the record in the case at bar remotely suggests that this occurred. Prosecutors are afforded wide latitude during closing arguments. See State v. Jones, Lucas App. No. L-05-1232,2007-Ohio-563, at ¶ 57; State v. Fletcher, Summit App. No. 23171,2007-Ohio-146, at *Page 13 
¶ 26. Here, we are not persuaded that the prosecutor made improper comments.
 {¶ 25} For these reasons, we hereby overrule appellant's fourth assignment of error.
 IV {¶ 26} Appellant's fifth assignment of error challenges both the sufficiency and the manifest weight of the evidence. These arguments raise conceptually different issues, see e.g. State v. Johnson (2000),88 Ohio St.3d 95, 112, 723 N.E.2d 1054; State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph two of the syllabus, and we must separately address them.
 {¶ 27} When reviewing the sufficiency of the evidence, appellate courts look to the adequacy of evidence and whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. SeeThompkins, supra at 386; State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492. In other words, after viewing the evidence and all inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all essential elements of the offense beyond a reasonable doubt. State v.Hancock, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, at ¶ 34;State v. Jones (2000), 90 Ohio St.3d 403, 417, 739 N.E.2d 300.
 {¶ 28} In the case at bar, appellant was charged with complicity to rape pursuant to R.C. 2923.03(A)(2) R.C. 2907.02 (A)(1)(b). This required the prosecution to prove that appellant aided or abetted another in engaging in "sexual conduct" with a *Page 14 
victim who was not the offender's spouse when the victim was less than thirteen years of age. "Sexual conduct," for purposes of this charge, includes either vaginal intercourse or the insertion, no matter how slight, of any part of the body into the vaginal cavity of the victim. See R.C. 2907.01(A).
 {¶ 29} The pivotal question with regard to this charge is whether sufficient evidence of penetration was adduced to find rape, and hence, complicity to commit rape. We again acknowledge that with respect to various counts the trial court found inadequate evidence of penetration and properly dismissed those charges. The court, however, permitted the jury to consider other counts and appellant maintains that the court erred because no evidence of penetration was adduced at trial. In fact, T.G. admitted that Bowers did not "put his penis" inside her "vagina" and later confirmed that his penis was not "inserted into [her] body in any way." Without penetration, there can be no rape in this case. Without rape, there can be no complicity to commit rape.
 {¶ 30} Nevertheless, we agree with the trial court that the prosecution adduced sufficient evidence to permit the jury to consider this particular charge. Although T.G. denied that penetration occurred, her sister testified that she personally observed the incident (through a crack in the door) and observed Bowers "[stick] his thing in her [T.G.'s] vagina." When the defense challenged I.B. as to how much she could actually see from her particular vantage point, she remained firm: *Page 15 
 "Q. * * * You couldn't see for sure that his front part was inside of where she pees from?
 A. I could. I just saw that his thing was in her vagina. That's what I saw.
 Q. You say he was inside of her?
 A. Yeah."
 {¶ 31} I.B.'s account, if believed, provides sufficient evidence to prove penetration, rape and complicity to commit rape. Hocking County Prosecutor's Office Investigator Ron Dane, who was present at appellant's home when a search warrant was executed, also bolstered I.B.'s testimony. When asked if he looked "through the slat in [the] door" that I.B. described, and whether it is possible to see "on the bed," Dane replied "[a]bsolutely" and thereby confirmed that I.B. could see from her location whether Bowers penetrated her sister. In view of this testimony, we conclude that sufficient evidence was adduced to prove complicity to commit rape.
 {¶ 32} Appellant was also charged with two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). This statute requires proof that appellant had sexual contact with another when the victim was less than thirteen years old. "Sexual contact" is defined as touching an erogenous zone, including genitals or a female breast, for the purpose of arousing/gratifying either person. R.C. 2907.01(B).
 {¶ 33} As we discuss infra, one problem in the instant case is the specific language used in the indictment. Counts VI and VII charged appellant with gross sexual imposition for using breast cups when the victim was less than thirteen years of age. Our *Page 16 
review reveals sufficient evidence to support appellant's conviction on one charge, but not both.
 {¶ 34} At trial, T.G. testified that before Bowers' release, appellant touched her in a sexual manner with a "toy" that "attached to [her] breasts." Because Bowers was not released until June 2004, and T.G. did not turn thirteen until August 2004, this evidence supports a conviction on one of the gross sexual imposition charges.
 {¶ 35} T.G. also testified that appellant used breast pumps two times after Bowers' release. However, we find nothing in the record to establish a date for these incidents. The problem with this matter is that if the incidents occurred after T.G. reached thirteen years of age, appellant cannot be found guilty of violating R.C. 2907.05(A)(4).
 {¶ 36} We readily acknowledge that the evidence also showed that appellant used a variety of other devices on T.G. before she reached thirteen years of age. However, counts six and seven specifically charge that appellant committed the offense by "using breast cups on [T.G.'s] breasts." If this arguably surplus language had been deleted from the indictment, possibly appellant could have been convicted for other incidents that involved other devices. However, that specific language (concerning breast cups) is included in the indictment. This runs afoul of the concept that a defendant cannot be convicted for crimes for which she was not charged. See State v. Gaul *Page 17 
(1997), 117 Ohio App.3d 839, 854, 691 N.E.2d 760; State v. Harris
(1979), 65 Ohio App.2d 182, 186, 417 N.E.2d 573.[7] *Page 18 
 {¶ 37} Having determined that sufficient evidence exists to support one of the gross sexual imposition charges, we now consider whether appellant's conviction on that charge is against the manifest weight of the evidence.
 {¶ 38} When reviewing a claim that a verdict is against the manifest weight of evidence, appellate courts may not reverse the conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997),120 Ohio App.3d 457, 473, 698 N.E.2d 440; State v. Garrow (1995),103 Ohio App.3d 368, 370-371, 659 N.E.2d 814. After our review of the record in the instant case, we cannot conclude that the trier of fact lost its way.
 {¶ 39} At trial, I.B. testified that Bowers penetrated her sister's vagina. Also, an investigator testified that I.B. could have indeed observed this activity through a door. T.G. testified that appellant touched her in a sexual manner and used a breast pump on her on at least one occasion before Bowers' June 2004 prison release and this activity occurred before T.G. reached the age of thirteen. This evidence is sufficient for the jury to conclude that appellant committed complicity to commit rape and gross sexual imposition. See R.C. 2907.05(A)(4).
 {¶ 40} Appellant counters that T.G.'s testimony was "contradicted in critical respects." That, however, goes to the *Page 19 
weight and credibility of the evidence. The trier of fact must determine those issues. See State v. Dye (1998), 82 Ohio St.3d 323, 329,695 N.E.2d 763; State v. Frazier (1995), 73 Ohio St.3d 323, 339,652 N.E.2d 1000. The jury, as trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it. See State v.Long (1998), 127 Ohio App.3d 328, 335, 713 N.E.2d 1; State v.Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80. A jury is in the best position to view the witnesses and to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh credibility. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Appellate courts should not generally second guess a jury on matters of weight and credibility. See e.g. State v. Vance, Athens App. No. 03CA27, 2004-Ohio-5370, at ¶¶ 10; State v. Baker (Sep. 4, 2001), Washington App. No. 00CA9.
 {¶ 41} In the case sub judice, we are not persuaded that appellant's conviction for one count of gross sexual imposition and complicity to commit rape is against the manifest weight of the evidence. However, because the evidence is insufficient to support a second gross sexual imposition conviction, we sustain
 {¶ 42} appellant's fifth assignment of error to that limited extent.
 IV *Page 20 {¶ 43} Appellant asserts in her sixth assignment of error that her Due Process rights have been violated because counts six and seven of the indictment are "identically worded" and "failed to accord her adequate notice of the offenses charged and failed to protect her from double jeopardy."
 {¶ 44} First, in view of the fact that we have reversed one of appellant's gross sexual imposition convictions, no danger exists that appellant will be convicted multiple times for the same offense in violation of her double jeopardy guarantees. Second, although counts six and seven are identically worded, they both allege that appellant committed gross sexual imposition against T.G. by using "breast cups" or pumps before she turned thirteen years old. Because two such charges existed, appellant had notice that she was charged with twice committing that offense before T.G. reached the age of thirteen.
 {¶ 45} For these reasons, we find no merit in appellant's sixth assignment of error and it is hereby overruled.
 V {¶ 46} Appellant asserts in her seventh assignment of error that her prison sentences are unconstitutional and violate her rights under theSixth Amendment to the United States Constitution. We agree with appellant to a limited extent.
 {¶ 47} The sentencing transcript reveals that the trial court cited to R.C. 2929.14(B) and declined to impose minimum prison sentences. Furthermore, although the court did not explicitly *Page 21 
cite R.C. 2929.14(E)(4), it apparently relied on that statute when it ordered the sentences to be served consecutively.
 {¶ 48} Two weeks after appellant's sentence, the Ohio Supreme Court struck down various sentencing statutes as unconstitutional.[8] SeeState v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, at paragraphs one and three of the syllabus. The court held that sentences based on those statutes must be reversed and the cases must be remanded for re-sentencing. Id. at ¶¶ 103-104. Thus, pursuant to Foster, we hereby vacate appellant's sentences and remand the matter for re-sentencing.
 {¶ 49} Appellant also suggests that we should instruct the trial court to impose minimum concurrent sentences because anything other than that sentence will violate her rights under the ex post facto clause of Article I, Section 10, of the United States Constitution as well as her Due Process rights guaranteed under the Fourteenth Amendment. We decline this invitation for two reasons. First, the issue is not presently before us and such an instruction amounts to an advisory opinion. SeeState v. Hardesty, Pickaway App. No. 06CA1, 2006-Ohio-5272, at ¶ 10;State v. Davis, Washington App. No. 05CA50, 2006-Ohio-3549, at ¶ 17, fn. 6. Second, even if the matter was properly before us, we have previously considered and rejected these issues. State v. Henry, *Page 22 
Pickaway App. No. 06CA8, 2006-Ohio-6942, at ¶¶ 11-12; State v.Grimes, Washington App. No. 04CA17, 2006-Ohio-6360, at ¶¶ 8-11.
 {¶ 50} In any event, consistent with the Ohio Supreme Court's ruling in Foster, supra, we hereby sustain appellant's seventh assignment of error and vacate her sentence. We hasten to add, however, that our decision should in no way be construed as a comment on the underlying merits of the trial court's sentencing decision.
 {¶ 51} Accordingly, having partially sustained appellant's fifth assignment of error and appellant's seventh assignment of error, the trial court's judgment is hereby affirmed in part and reversed in part. Appellant's conviction for complicity to commit rape and one gross sexual imposition count is hereby affirmed, appellant's conviction for one count of gross sexual imposition is hereby reversed, and appellant's sentences for these offenses are, pursuant to Foster, hereby vacated, and we remand the matter for re-sentencing.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered the judgment be affirmed in part, reversed in part and the case remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee costs herein taxed. *Page 23 
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Concurs in Judgment Opinion Kline, J.: Dissents
[1] Appellant neglected to include in her brief a separate statement of the assignments of error. See App.R. 16 (A)(3). We have taken these assignments of error from the brief's table of contents.
[2] Bowers was convicted in 1994 of attempted rape, attempted felonious sexual penetration and gross sexual imposition with an eleven year old girl. Five years later, he was deemed a "sexual predator."
[3] The "sexual stuff" included asking T.B. if she wanted to do "stuff" with her grandmother, "stuff" with her younger sister and "stuff" with him.
[4] The record is unclear what prompted the children to be removed from appellant's home or when that removal occurred. It is also unclear why the children were initially in their grandmother's custody.
[5] The child endangering charge set forth in count VIII of the indictment was also dismissed but it is unclear whether the dismissal arose from the absence of "penetration" evidence.
[6] Appellant did not file a notice of appeal until March 30, 2006, outside the thirty day time limit. See App. R. 4(A). Nevertheless, we granted appellant leave to file a delayed appeal and the matter is properly before us.
[7] Although we found no Ohio cases analogous to the instant case, decisions from other jurisdictions appear to agree with our conclusion. The consensus appears to be that, generally, allegations included in an indictment that are not essential to the elements of an offense are mere surplusage and may be disregarded. The exception to that rule, however, is when the state includes an unnecessary, but identifying, fact that describes the offense and the manner in which it was committed. In that event, the state must prove those additional facts. See e.g.Hernandez v. State (TX App. 1995), 903 S.W.2d 109, 113; Farmer v.State (GA. App. 1993), 430 S.E.2d 397, 398; Alston v. Commonwealth (VA. App. 2000), 529 S.E.2d 851, 853.
Recently, in Gardner v. Commonwealth (VA. 2001), 546 S.E.2d 686, 690, the Virginia Supreme Court reversed a conviction for obtaining money under false pretenses. Although the statute did not require a specific victim's identity, the state identified the victim in the indictment. At trial, the state introduced evidence to indicate that the victim was, in fact, someone other than the person identified in the indictment. Although the victim's name in the indictment was not a necessary element of the criminal offense, the indictment's language nevertheless provided the defendant with notice of the particular facts and crime for which he had to defend. Similarly, in the instant case the indictment put appellant on notice that she had to defend against two counts of using "breast cups" on T.B. before T.B. reached thirteen years of age. Thus, because the state identified a particular device and a particular time frame as integral parts of the indictment, appellant cannot be convicted of another offense that involved other activities or other devices. As our Georgia colleagues cogently noted, to permit the prosecution to prove that a crime was committed in a different manner than that specifically alleged in the indictment could subject an accused to unfair surprise at trial. See Floyd v. State (GA. App. 2001),553 S.E.2d 658, 661.
Here, the state could have crafted an indictment with less specific language or language that included other devices or other facts to help to identify every occasion that appellant engaged in improper conduct with the victim. We recognize, however, that a child victim may have great difficulty recalling specific and detailed events, including a detailed time frame, that occurred during their childhood years. However, the potential benefit in wording indictments with specific details is that if a person is alleged to have committed multiple offenses, specific facts could serve to provide the trier of fact with the ability to distinguish each incident from other similar incidents.
In summary, we believe that in the case sub judice the state's evidence at trial simply does not correspond to the specific allegation contained in the indictment.
[8] Obviously, the trial court did not have the benefit of theFoster decision when it sentenced appellant in the case sub judice. *Page 1